UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

       Jerry B. West,                                    Chapter 7
                                                Case No. 105-16249-JF

                 Debtor.
-------------------------------------------------------------x
      James & Mary Artis,

                 Plaintiffs,                              Adv. Proc. No. 105-01219-JF

         -against-

      Jerry B. West,

                 Defendant.
-------------------------------------------------------------x


<u>DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
EXCEPTING DEBT FROM DISCHARGE UNDER 11 U.S.C. § 523(a)(4)</u>


JEROME FELLER

UNITED STATES BANKRUPTCY JUDGE


Appearances:

Koehler and Isaacs, LLP
61 Broadway, 25th Floor
New York, New York 10006
Attorney for Plaintiffs


      By: Mathew Paulose Jr., Esq.


Silverman Sclar Shin & Byrne PLLC
381 Park Avenue South
Suite 1601
New York, New York 10016
Attorneys for the Defendant


      By: Thomas H. Herndon, Jr., Esq.

Plaintiffs James and Mary Artis commenced this adversary proceeding against debtor/defendant Jerry B. West, seeking an order declaring a pre-petition judgment debt owed by West nondischargeable. The complaint alleges that the judgment debt is nondischargeable under 11 U.S.C. § 523(a)(2), (4), and (6). Before the Court is plaintiffs' motion for summary judgment. Plaintiffs claim they are entitled to judgment as a matter of law under the doctrine of collateral estoppel because the issues to be decided under § 523(a)(4) and (6) were already decided in their favor in the lawsuit that created the judgment debt. For the reasons hereinafter set forth, we grant the motion for summary judgment and find that the judgment debt is nondischargeable under § 523(a)(4).

## I. Background

The saga set forth below is derived from the parties' statements of facts. Jerry West is a clergyman, serving as the reverend of the Mount Moriah Church of God ("Mount Moriah") located in Brooklyn, New York. Throughout the 1990's he ran a program at the church to assist persons with "financial difficulty." The program offered budget counseling and assistance to those seeking mortgage refinancing. The plaintiffs are an elderly couple. In early 1995, they owned two inherited homes in New Jersey and had difficulty staying current with the mortgage payments on the properties.

In February 1995, plaintiff Mary Artis heard an advertisement on the radio about West's program. She told her husband and together they went to meet with West. At the meeting, West told them he could assist them in obtaining favorable refinancing through the church and requested a power of attorney so that he could make the arrangements. The plaintiffs agreed.

In or about September 1995, West contacted plaintiffs and told them to come to the church with the deeds to their homes for another meeting. At the second meeting, West had  plaintiffs transfer ownership of the homes to Mount Moriah. The plaintiffs were told that the homes must be in the name of Mount Moriah to obtain favorable refinancing, but that six months after the refinancing they could regain title and assume the new mortgage. The plaintiffs were further instructed that, until they regained ownership of their homes, they must make payments on the new mortgage by paying rent to Mount Moriah, with the rent to be about the same or less than their prior mortgage payments.

Thereafter, the plaintiffs started to receive rent invoices, but from an entity named the Interdenominational Brotherhood, Inc., ("Interdenominational"). The rent invoices were for a higher amount than their prior mortgage payments. When the plaintiffs called West to inquire, West informed them that title to the homes had been transferred from Mount Moriah to Interdenominational and if they failed to pay rent, the homes would be lost in foreclosure. The plaintiffs made the rent payments for a few months, but then stopped upon the advice of an attorney. The homes were later lost in foreclosure.

On June 16, 1998, plaintiffs filed a diversity suit against West, James Christian,[1] and Mount Moriah in the United States District Court for the Eastern District of New York. *James Artis and Mary Artis v. Mount Moriah Church of God, Rev. Jerry B. West, and James Christian*, Index No. 98-CV-4247 ("District Court Action"). The complaint, as amended on March 24, 2003, asserted claims for fraudulent misrepresentation, negligent misrepresentation, breach of fiduciary duty, and deceptive acts and practices in violation of New York General Business Law § 349. In sum, the complaint alleged that

---

[1] James Christian was an associate of West's at Mount Moriah.

West engineered a scheme to swindle plaintiffs out of their homes. The complaint charged that West was using his position as a reverend at Mount Moriah to induce unsophisticated retirees to transfer their homes to Mount Moriah so that West could transfer them to Interdenominational, an entity owned by West. Further, the complaint alleged that once the homes were transferred to Interdenominational, West refinanced them at a higher amount, taking out all the equity for himself.

A three day trial was held in the District Court Action, running from August 9, 2004, through August 11, 2004. West was represented by counsel during the pretrial discovery process, but not during trial. At trial both plaintiffs and two witnesses testified for the prosecution, and West testified on his own behalf in defense.

Two causes of action were tried: breach of fiduciary duty, and deceptive acts and practices in violation of New York General Business Law § 349. In regard to the breach of fiduciary duty claim, the jury was instructed as follows:

> Plaintiffs' first claim is for breach of fiduciary duty. The law recognizes that sometimes a special relationship, known as a "fiduciary relationship," may exist between parties. It exists either by express agreement between the parties, or by implied conditions or circumstances found in the facts, such as when a person reposed special confidence in another person. If a fiduciary relationship is found to exist, then the law imposes upon the parties certain duties to each other. These duties include the duty of full disclosure, the duty of care and loyalty, the duty to account, the duty to act fairly, and the duties of good faith and fidelity. If these duties are breached, then the party who committed the breach is liable to the other party for any damages sustained as a result of the breach. Accordingly, in this case, if you find, from the evidence, that a fiduciary relationship existed between the plaintiffs and defendant Jerry West, and that defendant West breached that duty, then you shall find for the plaintiffs as against defendant West.

(Trial Tr. of District Court Action, 332-33, Aug. 10, 2004). The jury was also instructed on punitive damages as follows:

> If you should find that the defendant [sic] is liable for the plaintiff's [sic] injuries, then you have the discretion to award, in addition to compensatory damages, punitive damages. You may award punitive damages if the plaintiff [sic] proves that the Defendants' conduct was malicious and reckless, not merely unreasonable. An act is malicious and reckless if it is done in such a manner and under such circumstances, as to reflect utter disregard for the potential consequences of the fact on the safety and rights of others.

(Id. at 337).

On August 11, 2004, the jury returned a verdict in favor of plaintiffs. The verdict sheet contained a number of questions in which the jury was requested to provide yes/no answers and dollar amounts, if applicable. The questions and answers were, in relevant part, as follows:

1. Was there a fiduciary relationship between defendant Jerry West and plaintiffs?
   Answer: Yes
2. Did defendant West breach his fiduciary duties to plaintiffs?
   Answer: Yes
6. Did plaintiffs suffer damages as a result of the breach?
   Answer: Yes
   If yes, in what amount? $390,000
7. Did defendant West act intentionally and deliberately and with evil motive when breaching his duty to plaintiffs?
   Answer: Yes
   If yes, what amount would sufficiently punish him? $75,000

(Decl. of Matthew Paulose, Esq., Ex. E). In accordance with the verdict, plaintiffs obtained a judgment against West on November 5, 2004, in the amount of $390,000 in compensatory damages and $75,000 in punitive damages (the "District Court Judgment").

On April 22, 2005, West initiated his bankruptcy case. The plaintiffs were listed by West on his Chapter 7 petition as having an undisputed, unsecured nonpriority claim in the amount of $510,000. No other creditors were listed. On June 14, 2005, plaintiffs filed the instant complaint seeking to have the District Court Judgment deemed

nondischargeable.    West filed an answer denying nondischargeability. The instant summary judgment motion was filed on November 11, 2005.    On January 12, 2006, the Court heard final argument and thereafter supplemental papers were submitted, including the entire transcript of the three day trial in the District Court Action.

## II. Discussion

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is proper if, in light of the evidence presented, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The burden to demonstrate that no genuine issue of material fact exists falls on the moving party. *See Federal Deposit Ins. Corp. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994).  In deciding a summary judgment motion, the trial court must resolve all ambiguities and draw all reasonable inferences in favor of the opposing party. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc*., 391 F.3d 77, 83 (2d Cir. 2004).

The plaintiffs assert that they are entitled to summary judgment under the doctrine of collateral estoppel.  As a general rule, collateral estoppel precludes the relitigation of issues that were actually litigated and decided in a prior proceeding.  It is well established that collateral estoppel is an appropriate method of adjudicating dischargeability proceedings when the factual issues underlying the determination of dischargeability were decided in a prior proceeding. *See Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991); *Giaimo v. Detrano (In re Detrano)*, 326 F.3d 319, 322 (2d Cir. 2003).  According

to plaintiffs, the issues to be decided under § 523(a)(4) and (6) have already been decided in their favor in the District Court Action.

New York preclusion law applies in determining the collateral estoppel effect of the District Court Action. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508-09 (2001); *see also Nas Electronics, Inc., v. Transtech Electronics PTE LTD.*, 262 F.Supp.2d 134, 143 (S.D.N.Y. 2003). Under New York law, there are two prerequisites that must be satisfied before the Court can employ the doctrine of collateral estoppel. First, the issues to be decided in the present proceeding must be identical to the issues that were necessarily decided in the prior proceeding. Second, there must have been a full and fair opportunity to litigate the issues in the prior proceeding. *See Parker v. Blauvelt Volunteer Fire Co., Inc*., 93 N.Y.2d 343, 349, 712 N.E.2d 647, 651, 690 N.Y.S.2d 478, 482 (1999). The party seeking the benefit of collateral estoppel has the burden of demonstrating the first prerequisite, while the party opposing the use of collateral estoppel bears the burden of establishing the absence of a full and fair opportunity to litigate the issues in the prior proceeding. *See Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 501, 467 N.E.2d 487, 491, 478 N.Y.S.2d 823, 827 (1984).

The plaintiffs have offered the record of the District Court Action and a copy of a document granting West a power of attorney in support of their motion for summary judgment. We begin with an analysis of whether the issues to be decided under § 523(a)(4) and (6) are identical to those already decided in the District Court Action.

## A. Section 523(a)(6)

Section 523(a)(6) provides that a debt "for willful and malicious injury" is not dischargeable. The terms "willful" and "malicious" are separate elements under §

523(a)(6) and in order to declare a debt nondischargeable under this provision both must be satisfied. *See Rupert v. Krautheimer* (*In re Krautheimer*), 241 B.R. 330, 340 (Bankr. S.D.N.Y. 1999).

In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the Supreme Court articulated a definitive interpretation of the willfulness element. The Supreme Court stated:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts.

*Geiger*, 523 U.S. at 61.  As such, only debts stemming from intentional torts, and not reckless or negligent torts, satisfy the willfulness element of § 523(a)(6).

The plaintiffs assert that the jury found West acted with the willfulness necessary under § 523(a)(6) when it answered yes to the question on the verdict sheet as to whether West acted "intentionally and deliberately." However, a review of the record in the District Court Action reveals that the affirmative answer may have been based on a jury instruction using the recklessness standard. The jury was instructed as follows:

> You may award punitive damages if the plaintiff [sic] proves that the defendants' conduct was malicious and reckless, not merely unreasonable. An act is malicious and reckless if it is done in such a manner and under such circumstances, as to reflect utter disregard for the potential consequences of the fact on the safety and rights of others.

(Trial Tr. of District Court Action, 337, Aug. 10, 2004).  Thus, one standard was used for the jury instruction and another was used in the jury verdict sheet.  This apparent inconsistency makes it difficult to determine whether the jury "actually decided" that

8

West acted willfully within the meaning of § 523(a)(6). *Bender v. Tobman (In re Tobman)*, 107 B.R. 20, 24 (S.D.N.Y. 1989) ("In order to apply collateral estoppel, the issue in the prior proceeding must have been 'actually decided.'"). The jury may have answered "yes" to either the question on the verdict sheet or the earlier jury instruction given by the judge. If the "yes" answer was in response to the jury instruction, than the issue "actually decided" in the District Court Action was whether West acted recklessly, a degree of intent which does not satisfy the willfulness requirement under § 523(a)(6). *Geiger*, 523 U.S. at 64 ("We hold that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."). Therefore, because we are unable to ascertain whether the jury "actually decided" that West acted intentionally, we must conclude that the plaintiffs have failed in their burden to demonstrate the willfulness element of § 523(a)(6). Accordingly, collateral estoppel may not be employed in respect of plaintiffs' request for summary judgment on their § 523(a)(6) claim.

## B. Section 523 (a)(4)

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The plaintiffs' claim under § 523(a)(4) is that West committed a "defalcation while acting in a fiduciary capacity." Therefore, to except the District Court Judgment from discharge, plaintiffs must establish, (i) West was acting in a fiduciary capacity; and (ii) he committed defalcation while serving in that fiduciary capacity. *See The Andy Warhol Foundation for Visual Arts, Inc., v. Hayes (In re Hayes)*, 183 F.3d 162 (2d Cir. 1999). The plaintiffs argue that both elements were already decided in the District Court Action, when the jury found that

West was in a fiduciary relationship with the plaintiffs and breached his fiduciary duties to them "intentionally and deliberately and with evil motive."

Whether a debtor acts in a fiduciary capacity under § 523(a)(4) is a question of federal bankruptcy law. *Hayes*, 183 F.3d at 166. Thus, a finding by a court under nonbankruptcy law that the debtor was a fiduciary may be insufficient for collateral estoppel purposes to establish that a debtor was acting in a "fiduciary capacity" under § 523(a)(4). The state or federal law at issue may bestow a broader meaning to the term fiduciary than it might have under § 523(a)(4). *See In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994) (Posner, C.J.) ("If… a fiduciary is anyone whom a state calls a fiduciary… states will have it in their power to deny a fresh start to their debtors by declaring all contractual relations fiduciary.") (citation omitted). Before estopping a debtor from arguing that he was not acting in a fiduciary capacity under § 523(a)(4), a bankruptcy court must first determine that the finding of a fiduciary relationship in a prior proceeding fits within the contours of § 523(a)(4).

Generally, a debtor acts in a fiduciary capacity under § 523(a)(4) if he serves under a technical or express trust. *See Zohlman v. Zoldan,* 226 B.R. 767, 772 (S.D.N.Y. 1998); *Sandak v. Dobrayel (In re Dobrayel)*, 287 B.R. 3, 14 (Bankr. S.D.N.Y. 2002); *Race Place of Danbury, Inc. v. Scheller (In re Scheller)*, 265 B.R. 39, 52 (Bankr. S.D.N.Y. 2001). "Constructive or implied trusts, or any trust where the existence of the trust is created merely on the basis of wrongful conduct (a trust ex maleficio) do not create a fiduciary relationship [under § 523(a)(4)]." *Zohlman*, 226 B.R. at 772. Moreover, the fiduciary relationship must exist prior to and independently of the wrongful conduct giving rise to the claim of nondischargeability. *See Davis v. Aetna*

*Acceptance Co.*, 293 U.S. 328, 333 (1934).  As such, a trust that might be imposed as a result of a breach of contract does not engender a fiduciary relationship within the meaning of § 523(a)(4).  *Id.*

Nevertheless, the fiduciary connection arising from a technical or express trust does not exhaust the universe of fiduciary relationships that fall within the ambit of § 523(a)(4).  *See Hayes,* 183 F.3d at 168-69.  The fiduciary requirement of § 523(a)(4) may also include relationships in which trust-type relationships are forged under state statutory or common law.  As stated by the Second Circuit in *Hayes*:

> It has been clear, at least since 1841, that the defalcation exception is not limited to express trusts, i.e., situations where a trustee is a beneficial owner of a res held and managed for a named beneficiary.  Indeed, the act stated as much in specifying "executor[s], administrator[s], guardian[s] or trustee[s]" and then adding others "acting in any other fiduciary capacity."
> ....
> The common link among the specific positions listed is that they involve "a difference in knowledge or power between fiduciary and principal which… gives the former a position of ascendancy over the latter."

*Hayes*, 183 F.3d at 167 (*citing Marchiando*, 13 F.3d at 1116).  Thus, in the Second Circuit an attorney is deemed to be acting in a fiduciary capacity in regard to his clients, *Hayes*, 183 F.3d at 168, corporate officers are deemed to be acting in a fiduciary capacity to the corporation, *In re Bernard*, 87 F.2d 705, 706 (2d Cir. 1937), and partners have been held to stand in a fiduciary capacity with respect to one another, *Zohlman,* 226 B.R. at 774.

In this case, West acted under a power of attorney.  A power of attorney is a written instrument by which one person, the principal, appoints another person, the attorney-in-fact, as agent and confers on the attorney-in-fact the authority to perform acts on behalf of the principal.  *Black's Law Dictionary* 1171 (6th ed.1990). The granting of a

power of attorney creates an agency relationship. *See Matter of Ferrara*, 22 A.D.3d 578, 802 N.Y.S.2d 471, 472 (2nd Dep't 2005). It is true that an agency relationship does not necessarily bring into existence a fiduciary relationship under § 523(a)(4). *See* 4 *Collier on Bankruptcy* ¶ 523.10[1][d] at 523-73 (15th ed. rev. 2004); *see also Cundy v. Woods (In re Woods)*, 284 B.R. 282, 290 (D.Colo. 2001); *Van De Water v. Van De Water (In re Van De Water)*, 108 B.R. 283, 289-90 (Bankr. D.N.M. 1995); *Bast v. Johnson (In re Johnson),* 174 B.R. 537, 541-42 (Bankr. W.D.Mo. 1994); *Air Traffic Conference of Am. v. Paley (In re Paley)*, 8 B.R. 466, 469 (Bankr. E.D.N.Y. 1981). However, where an agent's obligations to a principal are heightened by state statutory or common law and the agent is in a position of power over the principal, a fiduciary relationship within the meaning of § 523(a)(4) arises. *See e.g., Valley Memorial Homes v. Hrabik (In re Hrabik)*, 330 B.R. 765, 773 (Bankr. D.N.D. 2005); *Lexington Health Care Ctr. of Elmhurst, Inc. v. McDade (In re McDade),* 282 B.R. 650, 659 (Bankr. N.D.Ill. 2002); *Jacobs v. Mones (In re Mones)*, 169 B.R. 246, 257 (Bankr. D.C. 1994); *Rech v. Burgess (In re Burgess),* 106 B.R. 612, 620 (Bankr. D.Neb. 1989); *Merrywell v. Barwick (In re Barwick),* 24 B.R. 703, 706 (Bankr. E.D.Va. 1982).

Under New York law, a power of attorney creates a fiduciary relationship between principal and attorney-in-fact. *See State St. Assocs., L.P. v. New York State Urban Dev. Corp.  (In re State St. Assocs., L.P.),* 323 B.R. 544, 559 (Bankr. N.D.N.Y. 2005); *In re Garson*, 2 Misc.3d 847, 849, 774 N.Y.S.2d 644, 646 (Sup. Ct. New York Co. 2003); *In re Guardianship of Kent*, 188 Misc.2d 509, 510, 729 N.Y.S.2d 352, 353 (Sup. Ct. Dutchess Co. 2001); *In re Luby*, 180 Misc.2d 621, 624, 691 N.Y.S.2d 289, 292 (Sup. Ct. Suffolk Co. 1999). The duties of an attorney-in-fact are clearly defined, and exist

prior to and are independent of any conduct that may give rise to a claim by the principal. As stated by a New York State appellate court: "the attorney-in-fact 'must act in the utmost good faith and undivided loyalty toward the principal, and must act in accordance with the highest principles of morality, fidelity, loyalty and fair dealing.'" *Semmler v. Naples*, 166 A.D.2d 751, 752, 563 N.Y.S.2d 116, 117 (3d Dep't 1990) (*citing In re DeBelardino*, 77 Misc.2d 253, 256, 352 N.Y.S.2d 858, 862 (Sur. Ct. Monroe Co. 1974)). These responsibilities mirror those imposed on relationships with no technical or express trust, but which nonetheless satisfy § 523(a)(4)'s fiduciary requirement, such as partners, *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928) ("the punctilio of an honor most sensitive"), and attorneys, *In re Cooperman*, 83 N.Y.2d 465, 472, 633 N.E.2d 1069, 1071, 611 N.Y.S.2d 465, 467 (1994) ("[t]he duty to deal fairly, honestly, and with undivided loyalty"). *See Hayes*, 183 F.3d at 168; *Zohlman*, 226 B.R. at 774.

Furthermore, in plaintiffs' interactions with West there was a wide gap in "knowledge or power," which gave West a position of ascendancy. The plaintiffs were unsophisticated retirees who sought assistance in refinancing their homes. West was a reverend who claimed he could obtain favorable refinancing for the plaintiffs through a program at his church. The plaintiffs clearly reposed a deep confidence in West when they followed his advice and transferred their homes to Mount Moriah. And, once the homes were transferred, the plaintiffs could not monitor West's activities with them. This difference in power and knowledge is what often distinguishes a fiduciary relationship under § 523(a)(4) from one that falls outside its scope. As stated eloquently by Judge Posner:

> If we probe more deeply the distinction between the fiduciary relation that
> imposes real duties in advance of the breach and the fiduciary relation that

> does not we find that the first group of cases involve a difference in knowledge or power between fiduciary and principal which… gives the former a position of ascendancy over the latter…. The fiduciary may know much more by reason of professional status, or the relation may be one that requires the principal to repose a special confidence in the fiduciary…. These are all situations in which one party to the relation is incapable of monitoring the other's performance of his undertaking, and therefore the law does not treat the relation as a relation at arm's length between equals.

*Marchiando*, 13 F.3d at 1116 (citations omitted). Accordingly, upon consideration of the legal obligations imposed on an attorney-in-fact under New York law, and the facts and circumstances of the relationship between plaintiffs and West, we find that West was acting in a fiduciary capacity within the meaning of § 523(a)(4) when the transactions at issue in the District Court Action occurred.

The second element that must be satisfied to find the District Court Judgment nondischargeable is that West committed a defalcation while acting in that fiduciary capacity. The meaning of "defalcation" under § 523(a)(4) is a matter of federal bankruptcy law. *See Otto v. Niles (In re Niles)*, 106 F.3d 1456, 1460 (9th Cir. 1997). Neither the Bankruptcy Code, nor the legislative history of § 523(a)(4) define defalcation. Based on a review of the case law there appears to be three lines of cases addressing the type of misconduct necessary to establish defalcation under § 523(a)(4). *See* 4 *Collier on Bankruptcy* ¶ 523.10[1][c] at 523-71 (15th ed. rev.2004). The first line is that even an innocent mistake involving property handled in a fiduciary capacity can constitute a defalcation. *Republic of Rwanda v. Uwimana (In re Uwimana)*, 274 F.3d 806, 811 (4th Cir. 2001); *Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane)*, 124 F.3d 978, 984 (8th Cir. 1997); *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182 , 1186 (9th Cir. 1996). The second line is that defalcation requires negligent conduct by the fiduciary. *Antlers Roof-Truss &*

*Builders Supply v. Storie (In re Storie)*, 216 B.R. 283, 288 (B.A.P. 10th Cir. 1997).  The third line is that defalcation requires reckless conduct by the fiduciary.  *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 185 (5th Cir. 1997); *Meyer v. Rigdon*, 36 F.3d 1375, 1384-85 (7th Cir. 1994).

In the Second Circuit the level of misconduct necessary to constitute a defalcation in the context of § 523(a)(4) is unclear.  The decisions of the Second Circuit on the issue only suggest that "some portion of misconduct" may be necessary. *See Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 512 (2d Cir. 1937) (stating that "although [the word misappropriation] probably carries a larger implication of misconduct than 'defalcation,' 'defalcation,' may demand some portion of misconduct; we will assume arguendo that it does."); s*ee also Hayes*, 183 F.3d at 172 (stating that the court need not decide the issue because the debtor had committed misconduct).

Here, we need not struggle with the question as to whether West's misconduct constituted defalcation.  Under all of the aforementioned views, a debt arising from reckless conduct while acting in a fiduciary capacity satisfies the definition of defalcation under § 523(a)(4).  In the District Court Action, the judge instructed the jury to impose punitive damages on West if his breach of fiduciary duty was "malicious and reckless." (Trial Tr. at 337).  In the verdict sheet the jury imposed punitive damages, finding that West had breached his fiduciary duty to the plaintiffs "intentionally and deliberately and with evil motive."  (Decl. of Matthew Paulose, Esq., Ex. E).  Accordingly, we find that the verdict in the District Court Action easily satisfies the defalcation requirement of § 523(a)(4).

### III. West's Contentions

West opposes the use of collateral estoppel on two grounds. First, he asserts that he did not have a full and fair opportunity to litigate the issues decided in the District Court Action because he appeared there *pro se*. Second, he asserts that the District Court Judgment was wrong.

West's contention that collateral estoppel should not apply because he proceeded in the District Court Action *pro se* is unavailing. In determining whether there has been a full and fair opportunity to litigate in a prior proceeding, we consider "the 'realities of the [prior] litigation', including the context and other circumstances which, although not legal impediments, may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him." *People v Plevy*, 52 N.Y.2d 58, 65, 417 N.E.2d 518, 436 N.Y.S.2d 224 (1980) (*citing Schwartz v Pub. Adm'r of County of Bronx,* 24 N.Y.2d 65, 72, 246 N.E.2d 725, 298 N.Y.S.2d 955 (1969). The nature of the party's representation in the prior action is only one factor among many to consider in determining whether there was a full and fair opportunity to litigate. "Among the specific factors to be considered are the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation." *Ryan*, 62 N.Y.2d at 501.

Here, the "realities of the prior litigation" are that it was a fully contested trial presided over by a district court judge. West was present throughout the trial, cross examined the plaintiffs' witnesses, and took the stand to testify on his own behalf.

Indeed, nothing prevented West from opposing plaintiffs' claims.  Moreover, West had the assistance of counsel during pre-trial discovery and presumably could have retained counsel for trial if he chose to do so.  The mere fact that West represented himself should not force plaintiffs to relitigate vigorously contested issues already decided in their favor.  *See e.g., Shirley v. Danziger*, 252 A.D.2d 969, 971, 676 N.Y.S.2d 369 (4th Dep't 1998) (rejecting the plaintiff's contention that she did not have a full and fair opportunity to litigate in the first action because she was proceeding *pro se*).  Accordingly, West has failed to meet the burden of showing that he did not have a full and fair opportunity to defend himself in the District Court Action.

West's contention that collateral estoppel should not apply because the District Court Judgment was in error also must fail.  West contends that the jury erred because the judge erroneously instructed the jury on the concept of proximate cause.  First, West presents no credible factual or legal basis to support this claim.  Second, collateral estoppel applies even to an erroneous ruling. *See People v. Berkowitz*, 50 N.Y.2d 333, 345, 406 N.E.2d 783, 428 N.Y.S.2d 927 (1980); *Reubens v. New York City Dep't of Juvenile Justice*, 930 F.Supp. 887, 892 (S.D.N.Y. 1996); *Hampton Heights Dev. Corp. v. Bd. of Water Supply of City of Utica*, 136 Misc.2d 906, 912, 519 N.Y.S.2d 438 (Sup. Ct. Oneida Co. 1987).  Underlying the doctrine of collateral estoppel is the "desire to conserve the time and resources of the court and the parties, and to avoid possible inconsistent determinations."  *People v. Aguilera*, 82 N.Y.2d 23, 30, 623 N.E.2d 519, 603 N.Y.S.2d 392 (1993).  Therefore, when a court with competent jurisdiction decides an issue, and the decision has not been vacated on appeal, reconsideration, or otherwise, the conclusiveness of the ruling is not impaired, even if it is incorrect.  *See* 50 C.J.S.

Judgments § 795 (2005).  As the Supreme Court reiterated nearly 75 years ago "the general and well-settled rule [is] that a judgment, not set aside on appeal or otherwise, is equally effective as an estoppel upon the points decided, whether the decision be right or wrong."  *Reed v. Allen*, 286 U.S. 191, 201 (1932). If West believed the district court judge committed an error, the proper course of action would have been to move for reconsideration or file an appeal.

### IV. Conclusion

Based on all of the foregoing, we find that the doctrine of collateral estoppel bars relitigation of the issues necessary to adjudicate plaintiffs' § 523(a)(4) claim.  Since the issues were adjudicated for the plaintiffs in the District Court Action, there exists no genuine issue as to any material fact and the plaintiffs are entitled to judgment as matter of law. Accordingly, the plaintiffs motion for summary judgment is granted and the District Court Judgment is declared nondischargeable under 11 U.S.C. § 523(a)(4).


IT IS SO ORDERED


Dated: March  21, 2006
         Brooklyn, New York

                                        s/Jerome Feller
                                        Jerome Feller
                                        United States Bankruptcy Judge